UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ERICA L. DEAN,

                                  No. 14-14588
                                  District Judge Laurie J. Michelson
       Plaintiff,           Magistrate Judge R. Steven Whalen

v.

COMMISSIONER OF
SOCIAL SECURITY,

       Defendant.

_____/

## REPORT AND RECOMMENDATION

      Plaintiff Erica L. Dean ("Plaintiff") brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner ("Defendant") denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. Plaintiff has filed a motion for remand and Defendant, a motion for summary judgment, both of which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's motion for summary judgment [Dock. #14] be GRANTED and that Plaintiff's motion for remand [Dock. #13] be DENIED.

## I. PROCEDURAL HISTORY

      Plaintiff applied for DIB and SSI on August 7, 2012, alleging disability as of April 1, 2012 (Tr. 160-163, 164-169). Upon denial of the claim, Plaintiff requested an

administrative hearing, held on September 5, 2013 in Mt. Pleasant, MI (Tr. 45). Administrative Law Judge ("ALJ") Kendra S. Kleber presided (Tr. 45). Plaintiff, represented by attorney Lewis Seward, testified (Tr. 52-70), as did her friend, Andrew Smith (Tr. 71-74), and Vocational Expert ("VE") Susan Lyon (Tr. 74-82). On September 27, 2013, ALJ Kleber found that Plaintiff was not disabled (Tr. 39-40). On November 19, 2014, the Appeals Council denied review (Tr. 1-7). Plaintiff filed suit in this Court on December 4, 2014.

## II.   BACKGROUND FACTS

Plaintiff, born July 26, 1975, was 38 at the time of the administrative decision (Tr. 40, 160). She completed high school and worked previously as a car deliverer, office manager, presser, product specialist, and salesperson (Tr. 210). She alleges disability as a result of multiple sclerosis ("MS") (Tr. 209).

### A. Plaintiff's Testimony

Plaintiff offered the following testimony:

She most recently worked as a product specialist at an automotive dealership (Tr. 53). Her work required taking prospective customers for test drives (Tr. 54). The job did not require her to lift more than a set of keys (Tr. 54). She last worked in August, 2012 (Tr. 52). Before holding the product specialist position, she worked as an office assistant (Tr. 54). The office position did not require her to lift more than 25 pounds (Tr. 55). Prior to holding the office job, she worked as a delivery driver at an auto parts warehouse (Tr. 56). In 2002, she worked briefly in accounts payable for a home improvement company (Tr. 58).

Plaintiff was unable to return to any of her previous jobs due to memory problems (Tr. 58). Her short-term memory was severely impaired (Tr. 59). On occasion, she was unable to remember conversations for even five minutes (Tr. 59). She would be unable to return to the delivery work due to temperature extremes in the warehouse (Tr. 59). Her inability to stay awake precluded her former work as an office assistant (Tr. 59). She experienced increased fatigue since recently beginning a new medication (Tr. 60). Due to MS, her hands sometimes "locked" while performing activities requiring handling and gripping (Tr. 61). She was unable to use a ladder or walk more than short distances due to her hips "locking up" (Tr. 61). The hip condition predated the MS diagnosis (Tr. 68). She did not use a cane (Tr. 61).

In response to questioning by her attorney, Plaintiff testified that her hips were not aligned (Tr. 62). She reported that she had just begun physical therapy (Tr. 62). She alleged right hand and left leg numbness and that the MS symptoms were exacerbated by heat (Tr. 62). She reported that hot weather caused vertigo and led to becoming "extremely overheated to the point of about passing out" (Tr. 63). She also experienced problems swallowing but denied eye problems (Tr. 64). She testified to depression as a result of MS (Tr. 64).

Plaintiff reported long-term anxiety but denied that the condition was related to MS (Tr. 64). She alleged anxiety in large groups, adding that she took Celexa for the condition (Tr. 65). She reported being unable to walk more than four blocks due to hip problems but

denied problems sitting (Tr. 66). Climbing stairs caused shortness of breath (Tr. 66). She was unable to lift more than 10 pounds (Tr. 67).

### B. Andrew Smith's Testimony

Andrew Smith, Plaintiff's long-term boyfriend offered the following testimony:

He had known Plaintiff for 14 years and they had lived together for the past two years (Tr. 71). In the past two years, Plaintiff napped two to three hours each day (Tr. 70-71). Plaintiff was able to grocery shop independently and typically complained of leg pain by the end of the shopping trip (Tr. 72). She had fallen twice at home and stumbled "a lot" (Tr. 72). She often forgot conversations that she had only one hour earlier (Tr. 72). She experienced vertigo and dizziness after being exposed to heat (Tr. 73). Recently prescribed medication had increased her fatigue (Tr. 74).

### C. Medical Records

#### 1. Records Relating to Plaintiff's Treatment

In May, 2012, Plaintiff sought emergency treatment for back pain and leg numbness (Tr. 278). An MRI of the lumbar spine was negative for significant abnormalities (Tr. 279). Plaintiff reported "intermittent" foot tingling for the past few years (Tr. 280). A June, 2012 MRI of the brain showed an active demyelinating lesion consistent with a diagnosis of MS (Tr. 277, 341). The following month neurologist Debashish Mridha, M.D. noted Plaintiff's report of muscle weakness, headaches, memory loss, and fatigue (Tr. 285). Dr. Mridha observed a "somewhat abnormal gait" (Tr. 286). In November, 2012, Dr. Mridha prepared

a Medical Examination Report, noting the presence of demyelinating disease resulting in headaches, weakness, fatigue, and tiredness (Tr. 340). She found that Plaintiff's condition was "stable" (Tr. 340).

January, 2013 treating records by Rashid Iqbal, M.D. found a normal gait and mood and no muscle weakness (Tr. 329). April, 2013 examination notes by Mohammed M. Al-Qasmi, M.D. note a family history of MS (Tr. 330). Plaintiff denied recent flare-ups of the physical symptoms of MS (Tr. 330). She exhibited good strength in the lower extremities with "some weakness in the left lower extremity" (Tr. 331). Dr. Al-Qasmi noted "a wide-based ataxic gait" (Tr. 331). May, 2013 treating records by Dr. Iqbal note back stiffness but no headaches, numbness, tingling, dizziness, or depression (Tr. . 327). The records note a normal gait (Tr. 327). In July, 2013, Dr. Iqbal noted that the conditions of MS and depression were "active," but found that Plaintiff did not experience current physical symptoms (Tr. 342-345).

In June, 2013, Dr. Al-Qasmi, M.D. found no "frank flare-up" of MS symptoms, but noted Plaintiff's report of "some paresthesias" of the left hip (Tr. 352). On an accompanying form, he noted the symptoms of blurred vision, increased frequency of urination, difficulty walking, headaches, dizziness, and memory problems (Tr. 354). July, 2013 imaging studies of the left hip showed no degenerative joint disease, fracture, or osteonecrosis (Tr. 364). In September, 2013, Dr. Al-Qasmi completed a Medical Source Statement, finding that Plaintiff experienced "reflex changes and unrefreshed sleep" (Tr. 365). He found that Plaintiff

exhibited "generalized extreme fatigue" (Tr. 365). He found that Plaintiff was limited to sitting for two hours in an eight-hour work day and standing or walking for no more than one (Tr. 365). He found that Plaintiff would be required to lie down at unpredictable intervals more than once each day and would miss work more than three times a month (Tr. 365-366). He found that MS "could affect cognition [and] ability to understand instructions" (Tr. 366). He found that due to MS, Plaintiff experienced "significant, reproducible fatigue of motor function with substantial muscle weakness on repetitive activity" (Tr. 366).

### 2. Consultative and Non-Examining Sources

In November, 2012 psychologist Michael Brady, Ph.D. performed a psychiatric evaluation, noting Plaintiff's report of physical limitations due to headaches, anxiety, and left leg and shoulder pain and numbness (Tr. 320). She reported that she was fired in August, 2012 due to excessive absences due to MS (Tr. 321). Dr. Brady's notes state that Plaintiff lived with her boyfriend and interacted regularly with several close friends (Tr. 321). She reported that she typically woke at 8:30 a.m. and spent most of the day using a computer and watching television (Tr. 321). She indicated that she shared the cooking and cleaning chores with her boyfriend and generally retired at midnight (Tr. 321).

Dr. Brady observed a normal gait and posture but a mildly depressed mood (Tr. 321). He found "abnormalities in concentration" (Tr. 321). He assigned Plaintiff a GAF of 60 with

a guarded prognosis[1] (Tr. 323).

The following month, Barbara Jones Smith, Ph.D. performed a non-examining review of the records on behalf of the SSA, finding that Plaintiff experienced mild limitation in activities of daily living and moderate limitation in social functioning and concentration, persistence, or pace (Tr. 87). She concluded that Plaintiff retained "the mental residual capacity to perform step one/two tasks on a sustained basis" (Tr. 92-93).

### D. The VE Testimony

VE Susan Lyons classified Plaintiff's former job as an administrative clerk as semiskilled and exertionally light and work as accounts payable or accounting clerk position, skilled and sedentary[2] (Tr. 76-79). The ALJ posed the following question, describing a hypothetical individual of Plaintiff's age[3], education, and work experience:

---

[1] A GAF score of 51-60 indicates moderate symptoms OR moderate difficulty in social, occupational, or school functioning. *Diagnostic and Statistical Manual of Mental Disorders--Text Revision* ("*DSM-IV-TR*"), 34 (4th ed. 2000).

[2] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. *Very heavy* work requires "lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. § 404.1567(e).

[3] While the ALJ erroneously referred to Plaintiff as a 36 rather than 38-year-old, the misstatement does not change the analysis (Tr. 79).

> [O]ur hypothetical worker is able to lift 10 pounds; they are able to stand or walk for 4 hours out of 8, or sit for 6 hours out of 8. . . . [T]he work should provide for changes of position . . . at will. . . . Work should involve no climbing stairs or ramps, and no ladders or scaffolds; occasional balance, stoop, kneel, crouch, and crawl; not concentrated exposure to extreme heat or extreme cold or humidity; no commercial driving; no exposure to hazards, such as unprotected heights or uncovered industrial machinery. And the work is limited to let's say simple, routine repetitive tasks in an environment involving no more than occasional and superficial interaction with others. Now, then, would such a person be able to perform any of Ms. Dean's past work? (Tr. 80).

Based on the hypothetical limitations, the VE found that the individual would be unable to perform Plaintiff's past relevant work, but could perform the unskilled, sedentary work of an assembler (1,700 in the regional economy); packer (1,000); and inspector (600) (Tr. 81).

In response to questioning by Plaintiff's attorney, the VE testified that if the above restrictions were amended to include the need to take unscheduled 60-minute work breaks due to fatigue, all competitive work would be precluded (Tr. 82).

### E. The ALJ's Decision

At Step One of the sequential analysis, the ALJ found that Plaintiff engaged in substantial gainful activity from April 9, 2012 through July 25, 2012, and was therefore not disabled for that period (Tr. 28). She noted that the remainder of the analysis pertained to the period beginning August 1, 2012 through the date of the decision (Tr. 29). Citing the medical records, ALJ Kleber determined that from August 1, 2012 forward, Plaintiff experienced the severe impairments of MS and depression but that neither of the conditions met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix

1 (Tr. 29-30). She found the condition of anxiety non-severe (Tr. 30). Citing the consultative findings, the ALJ determined that Plaintiff experienced mild limitation in activities of daily living and social functioning but moderate limitation in concentration, persistence, or pace (Tr. 31-32). The ALJ found that Plaintiff had the following Residual Functional Capacity ("RFC"):

> [L]ifting or carrying up to 10 pounds, standing or walking up to four hours of an eight-hour workday, or sitting up to six hours of an eight-hour workday, provided she is able to change position at will. The work cannot require cimbing stairs or ramps, or ladders or scaffolds. The work can occasionally require balancing, stooping, kneeling, crouching or crawling. The work involves no concentrated exposure to extreme heat or extreme cold or humidity. The work does not involve commercial driving, or exposure to hazards such as unprotected heights or uncovered industrial machinery. The work is limited to simple routine repetitive tasks in uncovered industrial machinery. The work is limited to simple routine repetitive tasks in an environment involving no more than occasional and superficial interaction with others (Tr. 33).

Citing the VE's job testimony, the ALJ found that while Plaintiff was unable to perform any of her past jobs, she could work as an assembler, packager, or inspector (Tr. 37, 39).

The ALJ discounted Plaintiff's allegations of disabling limitation. She noted that while Plaintiff alleged fatigue and the need to drink coffee to stay awake, she experienced those symptoms before the alleged onset of disability (Tr. 35). She found that Plaintiff's reported ability to walk up to one half of a mile, cook, clean, go bowling, shop, use a computer, manage finances, and socialize undermined the allegations of disability (Tr. 35). The ALJ cited the medical records showing that Plaintiff had not "had any documented multiple sclerosis flare-ups" (Tr. 35). She cited examination records showing only slightly

decreased strength in the lower extremities (Tr. 35).

### III.   STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

### IV.   FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## V. ANALYSIS

### A. The ALJ's Analysis of Dr. Al-Qasmi's September, 2013 Opinion

Plaintiff takes issue with the ALJ's rejection of Dr. Al-Qasmi's September, 2013 Medical Source Statement. *Plaintiff's Brief,* 4, *Docket #13*. She argues that the ALJ failed to address Dr. Al-Qasmi's opinion regarding the "signs and symptoms" of MS and his finding that fatigue and exertional limitations prevented all full-time work. *Id.* (*citing* Tr. 35-36, 365-366). She contends that in discounting Dr. Al-Qasmi's opinion, the ALJ failed to consider all of the factors listed in 20 C.F.R. 1527(c)(2). *Id.* at 5.

"If the opinion of the claimant's treating physician is well-supported by medically

acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, it must be given controlling weight." *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir.2009)(internal quotation marks omitted)(citing *Wilson v. CSS*, 378 F.3d 541, 544 (6th Cir.2004); 20 C.F.R. § 404.1527(c)(2)). However, in the presence of contradicting substantial evidence, the ALJ may reject all or a portion of the treating source's findings, *see Warner v. Commissioner of Social Sec.*, 375 F.3d 387, 391-392 (6th Cir.2004), provided that he supplies "good reasons" for doing so. *Wilson*, at 547; 20 C.F.R. § 404.1527(c)(2)); *see also* 96-2p, 1996 WL 374188, *5 (July 2, 1996). In explaining the reasons for giving less than controlling weight to the treating physician opinion, the ALJ must consider (1) "the length of the ... relationship" and "frequency of examination," (2) "nature and extent of the treatment," (3) the "supportability of the opinion," (4) "consistency ... with the record as a whole," (5) "the specialization of the treating source," and (6) other applicable factors. *Wilson*, at 544; § 404. 1527(c)(2).

Plaintiff's argument that the ALJ overlooked the portions of Dr. Al-Qasmi's opinion regarding the "signs and symptoms" of MS and her work-related limitations resulting from fatigue is without merit. The ALJ noted that Dr. Al-Qasmi's treating records from April and June, 2013 did not show significant active symptoms of MS (Tr. 35). My own review of Dr. Al-Qasmi's brief treating records state that there was no "frank flare-up" of MS symptoms in either April or June, 2013 (Tr. 330, 352). The ALJ observed that Dr. Al-Qasmi's finding that Plaintiff was unable to sit for more than two hours a day (Tr. 36, 365) was contradicted

by Plaintiff's testimony that she did not experience sitting limitations (Tr. 36, 66). As to the Dr. Al-Qasmi's opinion regarding the effects of fatigue, the ALJ noted that "Dr. Al-Qasmi's did not "show that he explored [Plaintiff's] ability to perform repetitive activity, much less evaluate resulting fatigue" (Tr. 36, 365).

Plaintiff claim that the ALJ did not consider all of the factors listed in 20 C.F.R. 1527(c)(2) is also contradicted by the record. The ALJ noted that Dr. Al-Qasmi saw Plaintiff on only two occasions before issuing the Medical Source Statement (Tr. 34). The ALJ pointed out that at a June, 2013 appointment, Plaintiff denied recent flare-ups (Tr. 34). The ALJ noted that while Dr. Al-Qasmi found the inability to sit for more than two hours a day, Plaintiff denied sitting limitations (Tr. 36, 365). The ALJ acknowledged that Dr. Al-Qasmi was a neurologist (Tr. 34).

While Plaintiff contends further that the ALJ did not consider "other" applicable factors under § 1527(c)(2), the administrative opinion contains adequate reasons for adopting some of the proffered limitations and rejecting others. While Plaintiff faults the ALJ for rejecting Andrew Smith's testimony, in fact, she adopted a portion of his testimony by restricting lifting or carrying to 10 pounds, precluding work requiring climbing or concentrated exposure to temperature extremes, and allowing a sit/stand option (Tr. 33). The ALJ reasonably discounted Mr. Smith's testimony that Plaintiff was disabled from all work on the basis that he was "influenced in favor of [Plaintiff] by a desire to help her" (Tr. 36). In addition, she noted that Mr. Smith's testimony of disabling physical and concentrational

symptoms was undermined by other portions of the record (Tr. 36), elsewhere citing Plaintiff's own report that she could shop, walk for half a mile, use a computer, manage her finances, and socialize (Tr. 36). The ALJ noted that upon exam, Plaintiff exhibited only slightly decreased motor strength (Tr. 35). She correctly determined that as a whole, the medical records did not strongly support Plaintiff's alleged degree of physical or mental limitation. Because the ALJ considered and articulated all of the applicable factors (including "other factors") in discounting the treating opinion, a remand on this basis is not warranted.

Likewise, Plaintiff's argument that the ALJ ought to have contacted Dr. Al-Qasmi to resolve ambiguities in the Medical Source Statement does not provide grounds for remand. The ALJ did not reject Dr. Al-Qasmi's opinion because it was ambiguous or incomplete, but rather, because it did not reflect the treating records or other evidence. "[A]n Administrative Law Judge need recontact a medical source only if the evidence received from that source is inadequate for a disability determination." *DeBoard v. Commissioner of Social Sec.*, 2006 WL 3690637, *5 (6th Cir. December 15, 2006); *see also* 20 § 404.1520b(c)(1). "Absent a gap in the record, the ALJ has no duty to recontact the physician." *Starkey v. Commissioner of Social Sec.,* 2008 WL 828861, *4 (W.D.Mich. March 26, 2008) (*citing Johnson v. Barnhart,* 138 Fed. Appx. 186, 189, 2005 WL 1414406, *3 (11th Cir. June 17, 2005); SSR 96–5p, 1996 WL 374183, *6 (July 2, 1996).

**B. The ALJ's Analysis of Dr. Brady's Consultative Findings**

Plaintiff also argues that in rejecting Dr. Brady's consultative opinion, the ALJ misquoted Dr. Brady's conclusions. *Plaintiff's Brief* at 10-12. Plaintiff notes that while Dr. Brady stated that "As a result of [Plaintiff's] emotional state she may often be distracted and her effectiveness and performance will be limited and slowed," the ALJ omitted "often" from her citation to Dr. Brady's conclusion. *Id.* (*citing* Tr. 36, 232). Plaintiff notes that the word "often" is defined as "many times" or "frequently" by Webster's Dictionary. *Id.* at 11; *see* http://www.merriam-webster.com/dictionary/often (last visited January 13, 2015)).

The ALJ stated that she gave "little weight" to Dr. Brady's opinion because it was "vague and without specific functional limitations" (Tr. 36). Elsewhere in the determination, the ALJ noted that Dr. Brady's diagnosis of "social anxiety disorder" was undermined by Plaintiff's long-term ability to work around others prior to the alleged onset of disability (Tr. 30). The ALJ's findings regarding Dr. Brady's opinion do not provide grounds for remand. First, because Dr. Brady is a consultative rather than treating source, his opinion is "entitled to no special degree of deference." *Barker v. Shalala,* 40 F.3d 789, 794 (6th Cir.1994). Second, it appears that the ALJ did not so much misquote Dr. Brady, but instead paraphrase a portion of his conclusion. The ALJ acknowledged that Dr. Brady found that the work performance would "'likely be limited and slowed'" (Tr. 36). While the ALJ omitted the modifier "often" from the finding that Plaintiff would "often be distracted and her effectiveness and performance will be limited . . . ." she comprehended (but rejected) the gist of Dr. Brady's conclusions; namely that concentrational problems would cause possible work

-15-

limitation.

Third, Plaintiff has not demonstrated why inclusion of the word "often" in the ALJ's citation would alter the rejection of Dr. Brady's findings. Accepting Plaintiff's argument that the modifier "often" signified an increased level of limitation *and* the ALJ overlooked the word "often" in Dr. Brady's conclusion, a remand is not warranted. Following this reasoning, the ALJ already rejected the "softened" form of Dr. Brady's findings omitting consideration of the word "often." It is therefore unlikely that she would accept the more stringent limitations implied by "often." Moreover, the ALJ did not err in finding that Dr. Brady's conclusions are not well supported. My own review of the examination notes shows a disconnect between Dr. Brady's clinical observations and his conclusion that Plaintiff's concentrational problems created potentially work-preclusive limitations. For example, Dr. Brady observed that Plaintiff's thoughts were "spontaneous and well organized" (Tr. 321). He noted that she was fully oriented and provided adequate answers in the categories of "abstract thinking" and "similarities and differences" (Tr. 322). She performed all calculations aside from the "serial sevens" correctly (Tr. 322). Dr. Brady's conclusion that Plaintiff experienced "abnormalities in concentration" appears to be supported solely by her failure to calculate the "serial sevens" and nothing more (Tr. 22-23). Dr. Brady's conclusion stands at odds with the mostly unremarkable clinical findings. As such, its rejection does not constitute error.

In closing, I note that my recommendation to uphold the Commissioner's

determination should not be read to trivialize Plaintiff's diagnosis or limitations. Nonetheless, the determination that Plaintiff was not disabled from *all* work is within the "zone of choice" accorded to the fact-finder at the administrative hearing level and should not be disturbed by this Court. *Mullen v. Bowen*, *supra*.

## VI. CONCLUSION

For these reasons, I recommend that Defendant's motion for summary judgment [Dock. #14] be GRANTED and that Plaintiff's motion for remand [Dock. #13] be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length

unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                              s/R. Steven Whalen
                                              R. STEVEN WHALEN
                                              UNITED STATES MAGISTRATE JUDGE

Date: January 26, 2016

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on January 26, 2016, electronically and/or by U.S. mail.

                                              s/C. Ciesla
                                              Case Manager