UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| ERICA L. DEAN,<br><br>    Plaintiff,<br><br>v.<br><br>COMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | Case No. 14-14588<br>Honorable Laurie J. Michelson<br>Magistrate Judge R. Steven Whalen |

**OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [16], GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [14], AND DENYING PLAINTIFF'S MOTION FOR REMAND [13]**

Plaintiff Erica Dean suffers from multiple sclerosis and depression. She sought social security disability insurance benefits and supplemental security income. In September 2013, an administrative law judge acting on behalf of Defendant Commissioner of Social Security concluded that Dean was not disabled within the meaning of the Social Security Act. Dean appealed here. Dean's motion for remand (Dkt. 13) and the Commissioner's motion for summary judgment (Dkt. 14) were referred to Executive Magistrate Judge R. Steven Whalen, who recommends that the Court affirm the ALJ's disability determination. Dean objects.

Having performed a *de novo* review of those portions of the magistrate judge's report and recommendation to which Dean has objected, 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(3); *Thomas v. Arn*, 474 U.S. 140, 150 (1985), the Court will adopt the recommendation of the magistrate judge for the reasons explained below.

I.

A.

Dean's first two objections surround Dr. Mohammed Al-Qasmi, a neurologist who twice examined her (Dkt. 11, Tr. at 330–38, 352–63) and whose opinion the ALJ gave "little weight" (Tr. at 36). (Dkt. 17, Obs. at 1, 3.)

In a September 17, 2013 medical source statement, Dr. Al-Qasmi checked a box indicating that Dean had "[s]ignificant, reproducible fatigue of motor function with substantial muscle weakness on repetitive activity, demonstrated on physical examination, resulting from neurological dysfunction in areas of the central nervous system known to be pathologically involved by the multiple sclerosis process." (Tr. at 366.) This language matches precisely one of the ways to meet the criteria for multiple sclerosis in the listing of impairments. *See* 20 C.F.R., Part 404, Subpart P, App. 1 § 11.09C.[1] Dr. Al-Qasmi also indicated that—because of "excessive fatigue"—in a normal workday, Dean could sit only for two hours and stand and walk for only an hour each. (Tr. at 365.) Additionally, he opined that Dean would "sometimes need to lie down at unpredictable intervals" at work and miss work more than three times per month. (Tr. at 365–66.)

Despite Dr. Al-Qasmi's opinions, the ALJ concluded at step three of her analysis that "[t]he severity of [Dean's] multiple sclerosis does not demonstrate the markers of severity required by [Listing 11.09]." (Tr. at 31.) In step four of her analysis, the ALJ assigned "little weight" to Dr. Al-Qasmi's opinion for numerous reasons. First, the ALJ noted that Dr. Al-Qasmi had visited with Dean only twice (in April and June 2013) before his September 2013 medical

---

[1] As Defendant points out in her response, Dean's objections reference listing 11.05B, which relates to brain tumors. *See* 20 C.F.R., Part 404, Subpart P, App. 1 § 11.05. As Dean does not suffer from brain tumors, the Court assumes that Dean meant to refer to listing 11.09C.

2

source statement. (Tr. at 35.) Second, the ALJ found that the box Dr. Al-Qasmi checked (with language reflecting the listing for multiple sclerosis) was "clearly directed at soliciting Dr. Al-Qasmi's opinion to establish the listing-level severity of Ms. Dean's MS when compared to Listing 11.09B"[2] and that Dean's attorney acknowledged as much. (Tr. at 35.) Third, the ALJ concluded that Dr. Al-Qasmi's records did not establish one of the key components of the box that Dr. Al-Qasmi checked: a "demonstration of reproducible fatigue on repetitive activity." (Tr. at 35.) In particular, the ALJ found that "Dr. Al-Qasmi's records don't show that he explored Ms. Dean's ability to perform repetitive activity, much less evaluate resulting fatigue." (Tr. at 36.) Fourth, the ALJ found that the fatigue documented in the record did not rise to the level of "fatigue of motor function with substantial muscle weakness," as Dr. Al-Qasmi had also indicated. (Tr. 36.) For instance, the ALJ found that while Dean "testified that she experiences general feelings of fatigue and is often tired, . . . she did not complain of substantial muscle fatigue." (Tr. at 36.) Finally, the ALJ found that Dean's testimony that she had no difficulty sitting was inconsistent with Dr. Al-Qasmi's opinion that she could sit for only two hours. (Tr. at 36.)

The ALJ thus concluded that "[t]he listing requires more than the level of fatigue which Ms. Dean has experienced according to the current record, and Dr. Al-Qasmi's check of a box does not change that." (Tr. at 36.) The ALJ further concluded that Dr. Al-Qasmi's findings "are not supported by the medical evidence as a whole, or even by his own notes." (Tr. at 36.)

After reviewing Dr. Al-Qasmi's treatment records, the magistrate judge found no error in the ALJ's conclusions. (R. & R. at 12–14.) Among other things, the magistrate judge cited Dr. Al-Qasmi's brief treatment records stating that there were no "frank flare-up[s]" of Dean's

---

[2] The ALJ appears to have erroneously referred to listing 11.09B instead of 11.09C, which matches the checked box.

multiple sclerosis symptoms at the time of his April (Tr. at 330) or June (Tr. at 352) 2013 exams. (R. & R. at 12.) The Court agrees with the magistrate judge, and none of Dean's arguments to the contrary are persuasive.

Dean first argues that the listing for multiple sclerosis "does not require 'frank flare-ups.'" (Obs. at 1.) She is correct. But this does not undermine the ALJ's finding that Dr. Al-Qasmi's treatment records from April and June did not support his later opinion in September. And Dean has cited no other evidence showing that she otherwise met the listing for multiple sclerosis.

Second, Dean appears to suggest that Dr. Al-Qasmi's check-the-box opinion is, standing alone, sufficient medical evidence to demonstrate that she meets the listing criteria for multiple sclerosis. (Obs. at 2–3.) She says "[t]he absence of the elements of a listing level impairment . . . in the treating physician's notes fails to trump a specific question posed to the treating source who is a specialist in the field." (Obs. at 2.) That is not necessarily true. As one court recently noted, "[C]ourts have increasingly questioned the evidentiary value of 'multiple choice' opinion forms . . . which are not supported by clinical records." *Lane v. Comm'r of Soc. Sec.*, No. 1:12CV388, 2013 WL 5428739, at *9 (W.D. Mich. Sept. 26, 2013) (report and recommendation finding no err in ALJ discounting multiple choice opinion form that was unsupported by evidence or explanation).

Here, the ALJ reasonably concluded that nothing in Dr. Al-Qasmi's treatment records supports his checked-box opinion that Dean meets listing § 11.09C. His only explanation was what he scribbled under the box that he checked, which simply read, "Excessive fatigue which is not uncommon [with] MS." (Tr. at 366.) Still, nothing on the September 2013 form suggests that he examined her at that time. And nothing from the prior records suggests any physical

4

examination that touched on the elements of § 11.09C—"demonstrat[ing]" "reproducible fatigue of motor function with substantial muscle weakness on repetitive activity." None of his exam records even mention fatigue, let alone that he physically examined the fatigue effects of repetitive activity. (*See* Tr. at 330–338, 353–363, 365–66.) Because Dr. Al-Qasmi's opinion was conclusory and unsupported by his prior treatment notes, the ALJ was free to discount it. *See Price v. Comm'r of Soc. Sec.*, 342 Fed. App'x 172, 176 (6th Cir. 2009) ("Because Dr. Ashbaugh failed to identify objective medical findings to support his opinion regarding Price's impairments, the ALJ did not err in discounting his opinion."); *see also* 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3) (providing that "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion" and "[t]he better an explanation a source provides for an opinion, the more weight we will give that opinion").

Third, Dean objects that the magistrate judge noted that her testimony about her ability to sit was inconsistent with Dr. Al-Qasmi's opinion. (Obs. at 2.) At the hearing, Dean was asked, "Does your MS or anything affect your ability to sit? In other words, can you sit okay?" (Tr. at 66.) Dean responded, "I can sit fine." (*Id.*) Granted, this question was not posed in the specific context of an eight-hour work day. But sitting "fine" generally does not square with Dr. Al-Qasmi's conclusion that Dean can at most sit for two hours during an eight-hour day (*see* Tr. at 365), and the ALJ reasonably concluded as much (Tr. at 36).

Fourth, Dean urges that it was inappropriate for the ALJ to consider that Dr. Al-Qasmi had only twice treated her before his September 2013 medical source statement opinion. (Obs. at 2.) Not so. Under 20 C.F.R. §§ 404.1527(c)(2)(i) and 416.927(c)(2)(i), the "[l]ength of the treatment relationship and the frequency of examination" are among the factors an ALJ should

consider when not giving controlling weight to a treating source's opinion. And under those provisions, "the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion." *Id.*

Dean next objects that the magistrate judge erred by finding that the ALJ considered all of the factors applicable when not giving controlling weight to a treating source. (Obs. at 3.) "If the opinion of a treating source is not accorded controlling weight, an ALJ must apply certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (citing 20 C.F.R. § 404.1527(c)(2)).

Dean says that the magistrate judge erred by finding that the ALJ considered as a factor that Dr. Al-Qasmi was a neurologist, a specialist. (Obs. at 3.) Under 20 C.F.R. §§ 404.1527(c)(5) and 416.927(c)(5), an ALJ will "generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." The magistrate judge found that the ALJ "acknowledged that Dr. Al-Qasmi was a neurologist." (R. & R. at 13 (citing Tr. at 34).) Dean says this was erroneous because the ALJ did not do so in the specific part of her analysis addressing Dr. Al-Qasmi's opinion. (Obs. at 3.) But the ALJ's reference to Dr. Al-Qasmi's specialty still was within her step four discussion, the same context in which she discounted Dr. Al-Qasmi's opinion. (Tr. at 34.)

Moreover, as Dean admits, specialization "is not the only factor" at play. (Obs. at 3.) And "[a]lthough the regulations instruct an ALJ to consider [the factors set forth in 20 C.F.R. §§ 404.1527(c)(2)(i) and 416.927(c)(2)(i)], they expressly require only that the ALJ's decision

6

include 'good reasons . . . for the weight . . . give[n] [to the] treating source's opinion'—not an exhaustive factor-by-factor analysis." *Francis v. Comm'r Soc. Sec. Admin.*, 414 F. App'x 802, 804 (6th Cir. 2011). Here, as described in detail above, based on the inconsistencies between Dr. Al-Qasmi's medical source statement and his treatment records, the ALJ provided good reasons for discounting Dr. Al-Qasmi's opinion. "Procedurally, the regulations require no more." *Id.* at 805.

Finally, Dean urges that Dr. Al-Qasmi's opinion is consistent with the record as a whole because another neurologist noted Dean's fatigue, and Dean personally testified about her fatigue. (Obs. at 4.) For instance, Dr. Mridha's records from June 18, 2012 (a time when the ALJ found that Dean was still engaging in substantial gainful activity (*see* Tr. at 29)) and July 31, 2012 examinations each indicate that Dean had "increasing weakness," an episode with "weakness on the left side of her body," "constant fatigue and tiredness," "intermittent [s]pasms in her left leg," "[d]ifficulty in [w]alking," and a "gait" that was "somewhat abnormal." (Tr. at 285–88.) In November 2012, Dr. Mridha filled out a medical source statement indicating that her prior physical examinations of Dean revealed "weakness, fatigue, and tiredness," but that her condition was "stable." (Tr. at 339–40.) The ALJ indeed considered Dr. Mridha's records. (Tr. at 35.) And based on these indications of generalized fatigue and tiredness, the Court finds no error in the ALJ's conclusion that the overall record, which includes Dr. Mridha's records, failed to support the type of fatigue indicated by Dr. Al-Qasmi: "fatigue of motor function with substantial muscle weakness." (*See* Tr. at 36.)

As for Dean's own testimony surrounding her fatigue, the ALJ also reasonably discounted that. As the ALJ discussed, Dean admitted she had the same fatigue symptoms for five years (including time in which she was still working), (*see* Tr. at 59–60), and that she had

7

previously reported that she was still able to walk a half-mile, cook, clean, bowl (though not as much as she used to), shop for groceries, use a computer, manage her finances, and visit friends in her daily life (*see* Tr. 216–23). (Tr. at 35.)

Thus, the Court finds that the magistrate judge correctly concluded that substantial evidence supports the ALJ's decision to assign little weight to Dr. Al-Qasmi's opinion.

## B.

Dean's next two objections concern the testimony of Andrew Smith, Dean's live-in boyfriend. Among other things, Smith testified that for the past two years, Dean napped two to three times per day. (Tr. at 71–72.) He also testified that she has memory problems (Tr. at 72), leg pain (*id.*), that she gets vertigo and dizziness from heat exposure (*id.* at 73), has fallen and stumbles "a lot" (*id.* at 72), and that because of her hip, she complains about walking and standing for any length of time (*id.* at 74).

The ALJ indicated that she agreed that Dean had many of the limitations described by Smith "but not to the extent she is completely disabled." (Tr. at 36.) The ALJ also noted that "the close relationship between Mr. Smith and Ms. Dean, and the possibility that the assessment was influenced in favor of Ms. Dean by a desire to help her, cannot be entirely ignored." (Tr. at 36.) The ALJ thus concluded, "[T]o the extent that Mr. Smith's opinion can be construed as limiting Ms. Dean more than the residual functional capacity as set forth above, I give it little weight, as it is not supported by the evidence of record." (Tr. at 36.)

The magistrate judge found that "[w]hile Plaintiff faults the ALJ for rejecting Andrew Smith's testimony, in fact, she adopted a portion of his testimony by restricting lifting or carrying to 10 pounds, precluding work requiring climbing or concentrated exposure to

temperature extremes, and allowing a sit/stand option. (R. & R. at 13 (citing Tr. at 36).) The Court agrees, and none of Dean's objections persuade otherwise.

Dean first objects that, contrary to the magistrate judge's assessment, "nothing in the Decision . . . ties Mr. Smith's testimony to the RFC." (Obs. at 5.) But the ALJ's analysis concerning Dean's RFC is precisely where she considered Smith's testimony. The ALJ summarized Smith's testimony. (Tr. at 36.) She explained that she agreed that Dean has many of the limitations described by Smith. (Tr. at 36.) And the ALJ then explained her reasons for giving "little weight" to Smith's testimony, but with an important caveat: the ALJ only assigned little weight to Smith's testimony "to the extent that [it] could be construed as limiting Ms. Dean more than the residual function capacity as set forth above," as that would not be "supported by the evidence of record." (Tr. at 36.) The Court sees no error here, as "[t]he testimony of lay witnesses . . . is entitled to perceptible weight only if it is fully supported by the reports of the treating physicians." *See Simons v. Barnhart,* 114 F. App'x. 727, 733 (6th Cir. 2004) (citation omitted).

Second, Dean takes issue with the ALJ's statement that Dean "has limitations in many of these areas of function due to her impairment [as discussed by Smith], but not to the extent she is completely disabled." (Obs. at 6 (citing Tr. at 36).) Because Smith did not in as many words say that he thought Dean was completely disabled, Dean says the ALJ's statement that Smith's testimony did not support a finding of complete disability is a "cut-and-paste statement" with "no factual support in the transcript record." (Obs. at 6.) This misses the mark. The ALJ appears to have said only that despite the limitations described by Smith, Dean is not completely disabled. This is supported by the ALJ's overall conclusion concerning Smith's testimony: "to the extent that Mr. Smith's opinion could be construed as limiting Ms. Dean more than the [RFC]," it was

9

entitled to little weight. (Tr. at 36.) The ALJ thus carefully caveated her analysis. She did not erroneously state that Smith had opined that Dean was totally disabled.

Dean also objects because the ALJ commented that "the close relationship between Mr. Smith and Ms. Dean, and the possibility that the assessment was influenced in favor of Ms. Dean by a desire to help her, cannot be entirely ignored in deciding how much weight it deserves." (Obs. at 6 (citing Tr. at 36).) The Commissioner readily admits that this alone would have been insufficient to reject Smith's testimony. (Dkt. 18, Def.'s Resp. at 8.) But the ALJ was free to consider the nature of Smith's relationship with Dean. *See* SSR 06-03p; 71 Fed. Reg. 45593-03; 2006 WL 2329939 ("In considering evidence from . . . spouses, parents, friends, and neighbors, it would be appropriate to consider such factors as the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence."). And as discussed above, this was not the only reason supporting the ALJ's assessment of Smith's testimony; she also concluded that—though recognizing Dean had many of the limitations Smith described—any construction of Smith's testimony that went further than the RFC would be unsupported by the evidence. (Tr. at 36.) Thus, the ALJ did not even outright discount Smith's testimony.

In her sur-reply, Dean also emphasizes that the ALJ apparently failed to consider "the most important confirming factor of Mr. Smith's testimony, which is her fatigue and the necessity to lie down during the day when fatigue sets in."[3] (Dkt. 19, Repl. at 4.) But Smith did not say that exactly. He said that she "sleeps a lot," adding that "she naps sometime two, three times a day. She'll get up and a couple hours later, have to go right back to sleep again." (Tr. at 71.) He later clarified that after Dean started taking medication a year earlier, "she has been

---

[3] The Court notes that Dean did not seek leave to file a sur-reply. Nevertheless, the Court has reviewed the sur-reply and considered the arguments.

10

sleeping a little bit more frequently." (Tr. at 74.) This may well have confirmed Dean's own reports of fatigue and her need to nap. (Tr. at 59–60.) But as noted before, the ALJ reasonably discounted Dean's testimony when it came to the ultimate disability determination because Dean stated that she had experienced those symptoms for five years, well before the alleged onset. (*See* Tr. at 35, 65.)

Finally, Dean takes issue that, in finding no error in the ALJ's consideration of Smith's testimony, the magistrate judge noted that "elsewhere" the ALJ cited "Plaintiff's own report that she could shop, walk for half a mile, use a computer, manage her finances, and socialize." (*See* R. & R. at 14.) Dean offers this argument (errors and emphasis in the original):

> The Report attempts to bootstrap the ALJ's analysis of Ms. Dean's mental impairments as substantial evidence contradicting Mr. Smith's testimony. This is akin to comparing 'apples to oranges.' This *post-hoc* rationalization. By reaching beyond the ALJ's analysis of Mr. Smith's statement, the ALJ did not make a determination that Ms. Dean's activities in the function report, cited as Exhibits 5E and 4F, page 2, are inconsistent with Mr. Smith's testimony.

(Obs. at 7.) It is hard to make sense of this argument. But the bottom line is that the Court is unpersuaded that the ALJ erred in finding that testimony from Smith, a lay person, was entitled to little weight to the extent that it could be construed as suggesting Dean should be more restricted than the medical evidence otherwise supported.

## C.

Dean finally objects that the magistrate judge should have found error in the ALJ's characterization of the one-time evaluation of Dean by Dr. Michael Brady, a psychologist. (Obs. at 8.) Dr. Brady's report indicates that "[a]s a result of [Dean's] emotional state, she may *often* be distracted and her effectiveness and performance will be limited and slowed." (Tr. at 232 (emphasis added).) The ALJ gave "little weight" to Dr. Brady's opinion, finding that it was

"vague and without specific functional limitations." (Tr. at 36.) But when describing Dr. Brady's report, the ALJ omitted the word "often." (Tr. at 36.)

The magistrate judge concluded that remand was inappropriate on this basis for several reasons. First, the magistrate just noted that Dr. Brady was not a treating source. (R. & R. at 15.) Second, the magistrate judge found that it appeared the ALJ simply paraphrased rather than misquoted Dr. Brady. (*Id.*) Third, the magistrate judge found that Dean had failed to show how including the word "often" would have changed anything. (*Id.* at 16.) Finally, the magistrate judge found that based on his own review, "the ALJ did not err in finding that Dr. Brady's conclusions are not well supported" in that "Dr. Brady's conclusion stands at odds with the mostly unremarkable findings." (R. & R. at 15–16.) For instance, as the ALJ found, Dr. Brady's "social anxiety disorder" was not work-preclusive because Dean testified that she had experienced anxiety since high school and her anxiety had not increased after she stopped working. (Tr. at 30.) Specifically, Dean testified that she "always had anxiety" and that her anxiety was "pretty much the same" since she stopped working. (Tr. at 64–65.) The Court again agrees with the magistrate judge.

Dean's main objection here is that "the possibility of being distracted, i.e., *may be distracted*, is significantly different than the factor of '*may often be distracted*,' which can be work-preclusive." (Obs. at 8 (emphasis in original).) But she offers no explanation or authority. And the Court agrees with the magistrate judge that Dean has failed to show how the word often should change the outcome—especially because Dr. Smith was a non-treating source, thus entitling his opinion to "no special degree of deference." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). And as the magistrate judge correctly observed, even assuming that the ALJ overlooked the word "often" and that word "signified an increased level of limitation," because

the ALJ "rejected the 'softened' form of Dr. Brady's findings omitting consideration of the word 'often' . . . [i]t is therefore unlikely that she would accept the more stringent limitations implied by 'often.'" (R. & R. at 16.)

For this same reason, the Court is unpersuaded by Dean's other line of argument: that the Court must reject what she characterizes as the magistrate judge's "pure post-hoc speculation" in finding that Dr. Brady's conclusion was unsupported by the rest of his findings. (Obs. at 9; Repl. at 4.) The magistrate judge's review of the record was only one of several reasons he found no error in the ALJ's paraphrased description of Dr. Brady's conclusion.

## II.

For the reasons stated, having reviewed the report and recommendation (Dkt. 16) and Dean's objections (Dkts. 17, 19), the Court will ADOPT the report, DENY Dean's motion for remand (Dkt. 13), GRANT the Commissioner's motion for summary judgment (Dkt. 14), and affirm the disability determination of the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g). A separate judgment will issue.

SO ORDERED.

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE

Dated: March 8, 2016

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on March 8, 2016.

s/Jane Johnson
Case Manager to
Honorable Laurie J. Michelson

13